[Cite as *State ex rel. Holloman v. Dolan*, 2016-Ohio-577.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Martin L. Holloman,              :

       Relator,                                    :

v.                                                          :                    No.  15AP-31

Ryan G. Dolan, Staff Counsel              :            (REGULAR CALENDAR)
Ohio Department of Rehabilitation
and Corrections and Jamie O'Toole-      :
B[i]llingsley Executive Assistant
Ohio Parole Board,                              :

      Respondents.                             :

D E C I S I O N

Rendered on February 18, 2016

*Martin L. Holloman,* pro se.

*Michael DeWine*, Attorney General, and *Gene D. Park,*  for
respondents.

IN MANDAMUS

HORTON, J.

{¶ 1}   Relator, Martin L. Holloman, a former inmate at the Pickaway Correctional Institution, requests a writ of mandamus ordering respondents to provide documents he allegedly requested by letter dated July 8, 2014, pursuant to the Ohio Public Records Act, R.C. 149.43.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. Specifically, the magistrate determined that the respondents only received a one-page letter from relator, that letter contained a request for production of three items, and that respondents and other ODRC employees conducted a diligent and reasonable search for the Ghee memo, but were

unable to find it. The magistrate found that it is more probable than not that the Ghee memo was destroyed pursuant to ODRC's records retention schedule.

{¶ 3}   Based on the above and past precedent, the magistrate further found that relator is not entitled to a writ of mandamus to compel the production of the four items not included in his request, and that relator had not shown that the Ghee memo was in the possession of ODRC at the time of the request. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 4}   No objections have been filed to the magistrate's decision.

{¶ 5}   Finding no error of law or other defect on the face of the magistrate's decision, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Writ of mandamus denied.*

KLATT and BRUNNER, JJ., concur.

————————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Martin L. Holloman, | : | |
| Relator, | : | |
| v. | : | No. 15AP-31 |
| Ryan G. Dolan, Staff Counsel | : | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation | | |
| and Corrections and Jamie O'Toole- | : | |
| B[i]llingsley Executive Assistant | | |
| Ohio Parole Board, | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on November 24, 2015

*Martin L. Holloman,* pro se.

*Michael DeWine*, Attorney General, and *Gene D. Park,* for respondents.

## IN MANDAMUS

{¶ 6}   In this original action, relator, Martin L. Holloman, a former inmate of the Pickaway Correctional Institution ("PCI"), requests a writ of mandamus ordering respondents to provide him documents he allegedly requested by letter dated July 8, 2014 pursuant to the Ohio Public Records Act, R.C. 149.43.

Findings of Fact:

### Part I—Procedural Chronology and Evidence Submitted

{¶ 7}   1. On January 15, 2015, relator filed this mandamus action against two named employees of the Ohio Department of Rehabilitation and Correction ("ODRC").

Named as a respondent is Ryan G. Dolan who is ODRC staff counsel at the Operations Support Center. Also named is Jamie O'Toole-Billingsley who is executive assistant for the Ohio Parole Board, a division of ODRC.

{¶ 8}   2. In his complaint, relator alleges that he mailed a public records request to O'Toole-Billingsley on July 8, 2014. Relator did not attach to his complaint a copy of the records request. However, relator endeavors to enumerate in his complaint seven items allegedly requested in his July 8, 2014 request.

{¶ 9}   3. According to the complaint, by letter dated August 6, 2014, O'Toole-Billingsley acknowledged receipt of relator's "letter dated July 8, 2014 in which you are requesting several records." O'Toole-Billingsley informed relator that his "inquiry has been forwarded to our department's Office of Legal Services for review and response."

{¶ 10}   4. Relator attached to his complaint a copy of a letter from Dolan informing him:

> The Ohio Parole Board is in receipt of your public records request dated July 8, 2014. You request copies of: (1) 2006 Agreed Remedial Order in a Federal class action lawsuit; (2) a memo titled "Ghee to all concerned" regarding Policy No. 105-PBD-08; and (3) any and all post-release control screening records related to you.
>
> Please be advised that the Parole Board cannot accommodate requests (1) and (2) above. With respect to item (1), the 2006 Agreed Remedial Order is not a Parole Board record and thus cannot be provided. I suggest you contact the Federal Court, as it is a Federal Court document. With respect to item (2), Parole Board staff searched for the requested item, but was not able to locate a copy. The Parole Board is unable to verify whether such a document ever existed.
>
> With respect to item (3), attached please find a "PRC Result Notification" dated October 22, 2010.

{¶ 11} While the Dolan letter is dated July 8, 2014, that date is incorrect. Apparently, the Dolan letter was mailed on August 25, 2015.

{¶ 12} 5. According to the complaint, of the seven enumerated items allegedly requested by relator's July 8, 2014 letter, respondents failed to respond to four of the requests.

{¶ 13} 6. Also attached to the complaint as an exhibit, is the three-page affidavit of Harry Hageman, executed July 28, 2006. In the affidavit, Hageman avers that he is the "Deputy Director of the Division of Parole and Community Services" and that he is "Acting Chief of the Ohio Adult Parole Authority."

In the affidavit, Hageman avers at paragraph seven:

Following enactment of the PRC statutes, the APA followed screening guidelines set forth in a memorandum from Margarette Ghee, who was then the Chair of the Parole Board, dated December 9, 1996. A copy of that memorandum is attached as Exhibit A-2.

{¶ 14} Apparently, attached to the Hageman affidavit is a memorandum from Margarette T. Ghee, Chair of the Ohio Parole Board, dated December 9, 1996. "Post Release Control Screening" is one of the subjects of the Ghee memorandum.

{¶ 15} Relator attaches to his complaint a copy of the Hageman affidavit and the Ghee memorandum to show that, despite the Dolan letter indicating that the Ghee memorandum could not be located in an ODRC search, that the Ghee memorandum does indeed exist because relator is in possession of the Ghee memorandum that he requested a copy of in his July 8, 2014 request.

{¶ 16} On February 17, 2015, respondents O'Toole-Billingsley and Dolan each filed an answer to the complaint. In their answers, respondents each deny that relator requested other than the three items identified in the Dolan letter dated July 8, 2014.

{¶ 17} 7. On February 20, 2015, relator moved for summary judgment under Civ.R. 56. In his memorandum in support of summary judgment, relator alleged that respondents failed to address four of the seven items relator allegedly sought by his July 8, 2014 letter. However, relator did not submit a copy of his July 8, 2014 letter for this court's consideration. Furthermore, in his memorandum, relator asserts that his production of the Ghee memorandum in this mandamus action is evidence that the Ghee memorandum existed as an ODRC public record at the time of the ODRC search for the record in response to relator's July 8, 2014 letter.

{¶ 18} 8. On March 3, 2015, respondent's filed a memorandum contra relator's motion for summary judgment. In their memorandum contra, respondents point out that

relator did not attach a copy of his July 8, 2014 letter to his complaint nor did he submit the letter in support of summary judgment.

{¶ 19} In the memorandum, respondents state that ODRC holds a copy of the July 8, 2014 letter and the accompanying envelope and that relator only asked for three items. However, respondent did not submit a copy of the letter and envelope in support of their opposition to summary judgment.

{¶ 20} 9. On April 24, 2015, the magistrate issued notice of a summary judgment hearing. The notice states that relator's February 20, 2015 motion for summary judgment is set for hearing on May 11, 2015.

{¶ 21} 10. On June 18, 2015, the magistrate issued his order denying relator's motion for summary judgment. In his order, the magistrate states:

> The magistrate finds that a genuine issue of material fact exists. That is, there is an unresolved dispute as to what relator actually requested in his July 8, 2014 letter. The letter has not been submitted to this court by relator or the respondents.

{¶ 22} 11. It can be noted that respondents did not file a cross motion for summary judgment.

{¶ 23} 12. On June 8, 2015, the magistrate issued an order setting forth a schedule for the filing of evidence and briefs.

{¶ 24} 13. In response to the magistrate's scheduling order, respondents submitted the affidavit of O'Toole-Billingsley executed July 23, 2015. The affidavit presents ten enumerate paragraphs. The affidavit avers:

> [Two] I currently serve as the Executive Assistant to the Ohio Parole Board, a division of the Ohio Department of Rehabilitation and Correction ("ODRC"). My job responsibilities include receiving and responding to correspondences made to the Parole Board. These correspondences include public records requests, and assisting the Board's responses to the requests by contacting individuals with knowledge of the requested records and public records law.
>
> [Three] On about July 11, 2014, I received in my office a letter from former inmate Martin Holloman. * * * Although faded, an ink stamp below the date on the letter appears to indicate it was received by the office on July 11, 2014. The

envelope does not indicate that the letter was sent by certified mail. This letter, dated July 8, 2014, was one page in length — there were no other pages in the attached envelope that I received from Mr. Holloman. In this letter, Mr. Holloman made public records requests for the following items:

1) 2006 Agreed Remedial Order in the federal class action lawsuit captioned, Heny [sic] Hernandez et al. - vs -Reginald Wilkinson, Case No. 1:06-cv-158 filed against the former DRC Director in the United States District Court for the Northern District of Ohio, Eastern Division. Any and all other papers related to the case.

2) Memo, "Ghee to All Concerned" dated 12/9/96 concerning post-release control screening; Policy No. 105-PBD-08.

3) Any and all post-release control screening related to inmate Martin L. Holloman #509-086 from the parole board staff at the London Correctional Inst. to the Parole Board Office.

These three records requests were the only records requests contained in the letter I received from Mr. Holloman on July 11, 2014.

[Four] On July 18, 2014, I emailed then-Chair of the Ohio Parole Board, Cynthia Mausser, regarding Mr. Holloman's public records request. * * * I emailed Ms. Mausser because, as the Chair of the Ohio Parole Board, she would have knowledge regarding internal memoranda and litigation records involving the Parole Board. In the email, I asked Ms. Mausser regarding the first and second items in the letter, as I was not familiar with the documents Mr. Holloman had requested. In response, on July 18, 2014, Ms. Mausser emailed me, stating that the remedial order in the *Hernandez* case referenced in Mr. Holloman's request was not a parole board record. * * * Ms. Mausser also informed me that she did not have a copy of the memorandum that Mr. Holloman requested, and advised me to check with the chief hearing officers of the Board, as they may have had copies of memos in their post release control manual. She also advised me to contact staff counsel at the ODRC Office of Legal Services, Ryan Dolan.

[Five] In response to Ms. Mausser's email, on July 18, 2014, I then emailed Mr. David Lomax, Ms. Debra Hearns, and Ms.

Brigid Slaton, the chief hearing officers of the Ohio Parole Board. * * * In that email, I asked the officers if they had the memo from former Ohio Parole Board Chair Margarette Ghee from December 9, 1996. I received an email from Ms. Hearns that same day, stating she did not have anything from that far back. * * * Mr. Lomax "emailed me on July 20, 2014, stating he did not have the record. * * * On July 21, 2014, Ms. Slaton mailed me back, stating that while she received memoranda regarding violation sanction process and post release control when she started working as a hearing officer, she could not find a memo from 1996. * * * I later received a verbal confirmation from Ms. Slaton after she searched for the memo in her Dayton office, and informed me that she could not find the memo.

[Six] Concerning the third item requested by Mr. Holloman in his letter — post release control screening documentation from the Parole Board while at the London Correctional Institution — I located a copy of a document we had on file, dated October 22, 2010, which notified the result of the Parole Board's March 5, 2009 assessment at London for post release control. * * *

[Seven] On August 6, 2014, I wrote and sent a response letter to Mr. Holloman, informing him of our receipt of his July 8, 2014 records request. * * * I informed him that his request was forwarded to our department's Office of Legal Services.

[Eight] I emailed Mr. Dolan on August 7, 2014, as Ms. Mausser had advised, in order for Mr. Dolan to offer a legal review of Mr. Holloman's records requests, and so that he could draft the response to Mr. Holloman. * * * I also attached to the email a copy of Mr. Holloman's July 8, 2014 letter * * *, and a copy of the October 22, 2010 post release control result notification * * *. In my email, I informed Mr. Dolan that the memo Mr. Holloman requested could not be found, and that it was the opinion of Ms. Mausser that the remedial order that Mr. Holloman requested was not a parole board record. * * * On that same day, Mr. Dolan emailed me back, asking if there were any other documents associated with the March 5, 2009 assessment. I had found none, so I emailed Mr. Dolan again on the same day, attaching the post release control result notification * * *, identifying it as the document that would correspond to the March 5, 2009 assessment. * * *

[Nine] On August 25, 2014, I received an email from Cheryl Jordan, an administrative assistant at ODRC. * * * Attached to this email was a letter sent from Mr. Dolan to Mr. Holloman, indicating that while the first and second items in Mr. Holloman's July 8, 2014 public records request could not be accommodated, a "PRC Result Notification," dated October 22, 2010, was attached. * * * This PRC Result Notification (the same one that I had found and previously sent to Mr. Dolan) * * * was also attached in the email I received from Ms. Jordan. Ms. Jordan stated in the email, "Mailed 8/25/15," which I understood to mean that she had mailed Mr. Dolan's letter and the PRC Result Notification to Mr. Holloman on that date.

[Ten] I have not received any additional public records requests or other correspondences from Mr. Holloman after August 25, 2014.

{¶ 25} 14. In further response to the magistrate's scheduling order, respondents submitted the affidavit of Brigid Slaton, executed July 23, 2015.  In her five-paragraph affidavit, Slaton avers:

[Two] I currently serve as a chief hearing officer for the Ohio Parole Board, a division of the Ohio Department of Rehabilitation and Correction. I have held this position since I began working at a temporary work level in July of 2008, before moving in to the position permanently in January of 2009. I have worked for the Adult Parole Authority ("APA") since 1987 in various positions.

* * *

[Five] On July 18, 2014, I received an email from Jamie O'Toole-Billingsley directed to all the chief hearing officers, concerning whether any of us possessed a December 9, 1996 memo from former Ohio Parole Chair Margarette Ghee * * * I searched my files and emails to see if I had a copy of this memo, but I could not find it. I emailed Ms. O'Toole-Billingsley on July 21, 2014, and informed her that I could not find the memo. * * * I also checked with my Dayton APA office to determine if I could locate any old memos that were transitioned to me when I became a chief hearing officer in 2008, but I could not locate any.

{¶ 26} 15. In further response to the magistrate's scheduling order, respondents submitted the affidavit of Cheryl Jordan, executed July 23, 2015. In her three-paragraph affidavit, Jordan avers:

> [Two] I am currently employed as an Administrative Professional 4 at the central office of the Ohio Department of Rehabilitation and Correction ("ODRC"), a position that is similar to an executive secretary. Part of my responsibilities includes sending correspondences on behalf of some of the employees in this office. That would include Mr. Ryan Dolan, a staff attorney for the Ohio Parole Board, which is a division of the ODRC.
>
> [Three] On August 25, 2014, I was working in this capacity at ODRC on behalf of Mr. Dolan. On that day, I received from Mr. Dolan a letter that had been written by him * * *, and an attachment entitled "PRC Result Notification" * * *. Mr. Dolan instructed me to send the letter and attachment to Mr. Martin Holloman, an inmate at the Pickaway Correctional Institution. Although the date on Mr. Dolan's letter is July 8, 2014, I actually mailed the letter on the date he gave it to me, August 25, 2014. This is verified by the email I sent to Ms. Jamie O'Toole-Billingsley on August 25, 2014. * * * In that email, I wrote to Ms. O'Toole-Billingsley, "Mailed 8/25/14," meaning that I was notifying her that I had mailed Mr. Dolan's letter and the accompanying attachment on that date.

{¶ 27} 16. In further response to the magistrate's scheduling order, respondents submitted the affidavit of Carolyn Young, executed July 23, 2015. Young is currently employed as the Assistant Chief of the Bureau of Records Management for ODRC. In her affidavit, Young explains the ODRC records retention policy.

{¶ 28} 17. In response to the magistrate's scheduling order of June 8, 2015, relator submitted his own affidavit, executed August 6, 2015. In his five-page affidavit, relator avers:

> [Two] On or about July 8, 2014, I mailed a two page letter to Jamie O'Toole-Billingsley the Executive Assistant to the Ohio Parole Board requesting several public records from the Parole Board.
>
> [Three] My letter was not sent by certified mail from the Pickaway Correctional Institution. My letter, dated July 8,

2014, was two pages in length. In my letter I requested several public records as follows.

1) 2006 Agreed Remedial Order in the federal class action lawsuit against the Ohio Department of Rehabilitation and Correction in Henry Hernandez v. Reginald Wilkerson, Case No. 1:06-CV-00158 in the United States District Court for the Northern District of Ohio.

2) The December 9, 1996, Memo by Mrs. Margret [sic] Ghee, former Chairman of the Ohio Parole Board concerning the changes in the parole board post release control screening process.

3) Any and all post-release control screening records related to inmate Martin L. Holloman #509-086.

4) The post-release control result notification assessment paperwork completed on or about March 5, 2009, placing inmate Martin L. Holloman #509-086 on 5 years of post-release control supervision.

5) The July 18, 2005, Departmental Memo by Mr. Gary Croft the former Chairman of the Ohio Parole Board to all parole board staff concerning PRC screening after careful consideration of the Ohio Supreme Court's decision in State v. Jordan, 104 Ohio St.3d 21.

6) The December 1998 Bill Board Article by John Kinkela the former Chief of the Ohio Adult Parole Authority concerning post-release control changes in the relationship with the Ohio court system.

7) The April 23, 2014 Audio and Video CD of his post-release control violation hearing held at the Corrections Reception Center by Parole Board Hearing Officer Jennifer A. Pribe and Parole Officer Terry Bodell.

The above records requests were the only documents that I requested in my two page letter I sent to Jamie O'Toole-Billingsley the Executive Assistant to the Ohio Parole Board.

[Four] Shortly after my release from the Pickaway Correctional Institution[,] I obtained from the clerk's office of the Ohio Supreme Court copies of the three-page affidavit executed July 28, 2006 of Harry Hageman the former Deputy Director of the Division of Parole and Community

Service and Acting Chief of the Ohio Adult Parole Authority concerning the memorandum from Margarette T. Ghee, the former Chair of the Ohio Parole Board, dated December 9, 1996 "Post Release control Screening" as one of the subjects of the Ghee memorandum.

[Five] Also, I obtained a copy of the original memorandum from Margarette T. Ghee, the former Chair of the Ohio Parole Board, dated December 9, 1996 concerning post-release control screening process.

**Part II—The magistrate's findings based upon his weighing of the evidence.**

{¶ 29} Based upon the above-described documentary evidence, including the various affidavits, the magistrate weighs the evidence and renders two findings of fact enumerated below:

{¶ 30} 1. The magistrate determines that respondents only received a one-page letter from relator dated July 8, 2014, and that one-page letter only contained a request for production of the three items described by Dolan in his letter to relator that is incorrectly dated July 8, 2014 (but mailed August 25, 2015).

{¶ 31} 2. The magistrate determines that respondents and other ODRC employees conducted a diligent and reasonable search of the December 9, 1996 Ghee memorandum, but were unable to find it. It is more probable than not that the December 9, 1996 Ghee memorandum was destroyed pursuant to ODRC's records retention schedule.

Conclusions of Law:

{¶ 32} Two issues are presented: 1) given that respondents did not receive relator's request for four of the items he allegedly requested in his July 8, 2014 letter, is relator nevertheless entitled to a writ of mandamus ordering respondents to now provide him with those four items, and 2) given that respondents exercised reasonable diligence in endeavoring to find a copy of the Ghee memorandum, but were unable to find such copy, is there any relief to which relator may be entitled with respect to the Ghee memorandum.

**First Issue**

{¶ 33} R.C. 149.43(C) requires a prior request as a prerequisite to a mandamus action. *State ex rel. Lanham v. Smith,* 112 Ohio St.3d 527, 2007-Ohio-609, ¶ 14. There

can be no failure of a public office to make a public record available in accordance with R.C. 149.43(B) without a request under R.C. 149.43(B) . *State ex rel. Bardwell v. Ohio Atty. Gen.,* 181 Ohio App.3d 661 (10th Dist. 2009).

{¶ 34} Given the above authorities, it is clear that relator is not entitled to a writ of mandamus to compel the production of the four items that relator did not include in his July 8, 2014 letter.

## Second Issue

{¶ 35} In cases in which public records are properly disposed of in accordance with a duly adopted records-retention policy, there is no entitlement to those records under the Public Records Act. *State ex rel. Toledo Blade Co. v. Sencea Cty Bd. of Commrs.,* 120 Ohio St.3d 372, 2008-Ohio-6253, ¶ 23.

{¶ 36} According to his August 6, 2015 affidavit, relator obtained a copy of the Ghee memorandum from the clerk's office of the Supreme Court of Ohio shortly after his release from PCI. Relator does not state the date that he actually received the Ghee memorandum from the Supreme Court of Ohio. However, relator apparently wants this court to infer that, if the clerk's office of the Supreme Court of Ohio provided the document upon relator's request following his release from PCI, then respondents must be able to provide the document from ODRC records. Clearly, relator's suggested inference is not mandated nor warranted under the circumstances here.

{¶ 37} Respondents ask this court to observe that the copy of the Ghee memorandum attached to relator's complaint and also submitted in relator's submission of certified evidence contains the stamp marking "Case 1:06-cv-00158-JG Document 50 Filed 07/28/2006 Page 11 of 19." According to respondents, the stamp marking on relator's copy of the Ghee memorandum indicates that the document was filed in a federal case styled "*Hernandez, et al. v. Wilkinson,* No. 1:06-cv-158, 2006 WL 3420186 (N.D. Ohio 2006)." (Respondent's Brief, 11.) Relator does not deny that the stamp markings on his copy of the Ghee memorandum indicate that the document was filed in the *Hernandez* case in July 2006.

{¶ 38} Regardless of the origin of the Ghee memorandum apparently in relator's possession, relator has not shown that the document was being kept by ODRC as a public record at the time of the search for the Ghee memorandum by respondents and other

ODRC employees during July and August 2014 as indicated by the affidavits submitted by the respondents.

{¶ 39} The writ of mandamus will not issue to compel a custodian of public records to furnish records which are not in his possession or control. *State ex rel. Hubbard v. Fuerst,* 8th Dist. No. 94799, 2010-Ohio-2489, ¶ 3, citing *State ex rel. Fant v. Mengel,* 62 Ohio St.3d 197 (1991).

{¶ 40} Based upon the above analysis, relator is not entitled to a writ of mandamus with respect to his July 8, 2014 request for the Ghee memorandum.

{¶ 41} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).